DOWD, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

HITACHI MEDICAL SYSTEMS )
AMERICA, INC., ) CASE NO. 5:09-CV-2613
)
Plaintiff, )
)
) **MEMORANDUM OF OPINION AND**
v. ) **ORDER**
)
ST. LOUIS GYNECOLOGY & )
ONCOLOGY, LLC, *et al.*, )
)
Defendants.

Before the Court is the Report and Recommendation ("R & R") of then Magistrate Judge

Benita Y. Pearson[1] recommending that Defendant St. Louis Gynecology & Oncology, LLC's

("SLGO") motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), (3) & (6) be

denied.  ECF No. 38.  SLGO has filed objections to the R & R.  ECF No. 41.  Plaintiff Hitachi

Medical Systems America, Inc. ("Hitachi") has filed a response to SLGO's objections.  ECF No.

42. The Court has conducted its *de novo* review of the matters raised in the objections.

Fed.R.Civ.P. 72(b)(3).

For the reasons set forth below, the objections are sustained, the R & R is rejected, and

this matter is dismissed without prejudice against Defendant St. Louis Gynecology & Oncology,

LLC for lack of personal jurisdiction.  The case shall proceed solely against Defendant Kirk A.

Bowman.

---

[1] Judge Pearson, subsequent to the filing of her Report & Recommendation as Magistrate Judge, has been elevated to District Judge.  Out of respect and in light of her confirmation as a Federal District Judge, the Court will not refer to District Judge Pearson as magistrate judge in the remainder of this opinion.

(5:09-CV-2613)

## I. Factual and Procedural Background

The relevant factual and procedural background from the Report & Recommendation is

as follows:

Plaintiff Hitachi Medical Systems America, Inc. is a Delaware corporation with its principal place of business in Twinsburg, Ohio. ECF No. 1 at 1. Hitachi Medical contracts with owners of certain medical equipment to provide inspection and maintenance of the equipment under a Service Maintenance Agreement (also referred to as "SMA"). ECF No. 1 at 2; ECF No. 20 at 1. Defendant SLGO is a limited liability company resident in Missouri that provides medical services in Missouri and Illinois. ECF No. 1 at 2; ECF No. 17 at 2. Hitachi Medical alleges jurisdiction pursuant to diversity of citizenship. ECF No. 1 at 6; 28 U.S.C. § 1332.

At the crux of the dispute is a Service Maintenance Agreement ostensibly between Hitachi Medical and West County Imaging Center ("West County").[4] On October 3, 2006, Kirk A. Bowman, co-defendant, acting as manager of West County, signed the Service Maintenance Agreement at issue for the inspection and maintenance of a CT scanner, identified as a Hitachi Medical CXR4 Multi-Slice CT. ECF No. 20 at 1. Subsequently, Hitachi Medical accepted the terms of the Service Maintenance Agreement, on October 19, 2006. ECF No. 20 at 1. The Complaint alleges that approximately three months later, in January 2007, SLGO purchased the assets of West County, including "the medical equipment which is the subject of the SMA." ECF No. 1 at 10.

n.4 The Complaint alleges that "the named entity 'West County Imaging Center' did not exist and does not currently exist" at the time Bowman signed the service maintenance agreement. ECF No. 1 at ¶ 8.

On November 6, 2010, Hitachi Medical filed a Complaint asserting breach of contract, unjust enrichment, and declaratory judgment against Bowman and SLGO. ECF No. 1 at 3. SLGO filed the instant motions to dismiss on April 1, 2010. ECF Nos. 17 & 18. With respect to Rule 12(b)(2) and, by extension, Rule 12(b)(3), SLGO argues that the Court lacks personal jurisdiction because "the facts demonstrate that SLGO lacks sufficient contacts with Ohio to satisfy Ohio's long arm statute and the notions of either 'general' or 'specific' personal jurisdiction" primarily because "SLGO is not a party to the Service Maintenance Agreement," and "cannot be bound by the forum selection clause contained in the agreement." ECF No. 17 at 5. Concerning Rule 12(b)(6), SLGO asserts that "Hitachi Medical's Complaint fails to set forth any factual basis or legal theory under which SLGO can be held liable for any of Hitachi Medical's claims." ECF No. 18 at 4.

(5:09-CV-2613)

>   While the Complaint alleges that "upon information and belief, [SLGO] *may* also be responsible under the [Service Maintenance Agreement]," in response to the Rule 12(b)(2) motion for lack of personal jurisdiction, Hitachi Medical argues that SLGO is bound by the Service Maintenance Agreement for four reasons: (1) SLGO is a successor entity to West County; (2) SLGO is a third party beneficiary to the Service Maintenance Agreement; (3) SLGO ratified the Service Maintenance Agreement; and (4) the doctrine of mutual mistake. ECF No. 23 at 5-6. Hitachi Medical asserts the same four arguments in response to the motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6). ECF No. 22 at 1.

>   SLGO retorts that it is not a party to, nor did it agree to or ratify the Service Maintenance Agreement at issue and, therefore, it is not bound by the forum selection clause contained therein. SLGO also retorts that it "did not acquire the assets of West County," namely the CT Scanner serviced by Hitachi Medical. ECF No. 26 at 3. SLGO further argues that it has not had any contact with Ohio, making it subject to personal jurisdiction. ECF Nos. 26 & 27.

ECF No. 38 at 2-4.

SLGO filed objections to each of the R & R's findings on December 14, 2010. ECF No. 41. Hitachi filed its response on December 28, 2010. ECF No. 42. Thus, the matter is fully briefed and ready for review.

## II.  **Standards of Law**

### A.  **Civil Rule 72(b) Standard**

Pursuant to Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1)(c), the District Court shall review *de novo* any finding or recommendation of the Magistrate Judge's Report and Recommendation that has been specifically objected to. The District Court need only review the Magistrate Judge's factual or legal conclusions that are specifically objected to by either party. *Thomas v. Arn*, 474 U.S. 140, 150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). Local Rule 72.3(b) reads in pertinent part:

(5:09-CV-2613)

> The District Judge to whom the case was assigned shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge.

### B.  Rule 12(b)(2) Standard

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move a court to dismiss a case for lack of personal jurisdiction.  The plaintiff bears the burden of demonstrating that personal jurisdiction exists.  *Air Prods. and Controls, Inc. v. v. Safetech Intern., Inc.*, 503 F.3d 544, 549 (6th Cir. 2007).  Where the defendant files a properly supported motion to dismiss, "the plaintiff may not stand on [its] pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction."  *Theunissen v. Matthews d/b/a Matthews Lumber Transfer*, 935 F.2d 1454, 1458 (6th Cir.1991) (citation omitted).  Nonetheless, when ruling on a motion to dismiss for lack of personal jurisdiction, a district court, "without conducting an evidentiary hearing, . . . must consider the pleadings and affidavits in a light most favorable to the plaintiff."  *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998) (citations omitted).  The plaintiff "need only make a *prima facie* showing of jurisdiction," and the court "does not weigh the [defendant's] controverting assertions." *Id.*  Dismissal is proper where the plaintiff's factual allegations taken together fail to establish a *prima facie* case for personal jurisdiction.  *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir.1996).

### C.  Rule 12(b)(6) Standard

According to *Bell Atl. Corp. v. Twombly*, to survive a Rule 12 motion to dismiss for failure to state a claim, "'grounds' of [plaintiff's] 'entitle[ment] to relief,' requires more than

-4-

(5:09-CV-2613)

labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal, et al.*, 129 S.Ct. 1937,

1950 (2009); Fed.R.Civ.P. 12(b)(6).  While dismissal for failure to state a claim upon which

relief may be granted does not require appearance, beyond a doubt, that plaintiff can prove no set

of facts in support of claim that would entitle him to relief, abrogating *Conley v. Gibson*, 355

U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80; "[f]actual allegations must be enough to raise a right to relief

above the speculative level, on the assumption that all the allegations in the complaint are true

(even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citation omitted); *see Assoc. of*

*Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (recognizing that

the Supreme Court "disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355

U.S. 41, 45-46 (1957)").

Iqbal made clear that *Twombly* was based upon "[t]wo working principles." *Iqbal*, 129

U.S. at 1949.  First, "[a]lthough for the purposes of a motion to dismiss [courts] must take all of

the factual allegations in the complaint as true, courts 'are not bound to accept as true a legal

conclusion couched as a factual allegation.'" *Iqbal*, 129 U.S. at 1949-50 (*citing Twombly*, 550

U.S. at 555).  "Second, only a complaint that states a plausible claim for relief survives a motion

to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a

context-specific task that requires the reviewing court to draw on its judicial experience and

common sense." *Iqbal*, 129 U.S. at 1950 (internal citations omitted).  Per *Twombly*, claims set

forth in a complaint must be plausible, rather than conceivable. *Twombly*, 550 U.S. at 570.

"[W]here well-pleaded facts do not permit the court to infer more than the mere possibility of

-5-

(5:09-CV-2613)

misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to

relief.'" *Iqbal*, 129 U.S. at 1950 (*citing* Fed.R.Civ.P. 8(a)(2)).  However, "[w]hen there are

well-pleaded factual allegations, a court should assume their veracity and then determine whether

they plausibly give rise to an entitlement to relief." *Iqbal*, 129 U.S. at 1950.

### III. <u>Analysis</u>

The Court first addresses the threshold issue of whether it has personal jurisdiction over

Defendant SLGO.  In diversity cases, the district court is to apply the choice of law rules of the

state in which the court sits.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

The parties agree that Ohio law controls the jurisdictional question before the Court.  In general,

two types of personal jurisdiction exist:

> Jurisdiction may be found to exist either *generally*, in cases in which a defendant's
> 'continuous and systematic' conduct within the forum state renders that defendant
> amenable to suit in any lawsuit brought against it in the forum state, or *specifically*,
> in cases in which the subject matter of the lawsuit arises out of or is related to the
> defendant's conduct with the forum state.

*Brunner v. Hampson*, 441 F.3d 457, 463 (6th Cir.2006) (*quoting Nationwide Mut. Ins., Co. v.*

*Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir.1996) (citations omitted) (emphasis added)).

In a diversity case such as this, a federal court may exercise personal jurisdiction over an

out-of-state defendant only if the following two requirements are satisfied: (1) the law of the state

in which the district court sits authorizes jurisdiction, and (2) the exercise of jurisdiction

comports with the Due Process Clause.  *Brunner*, 441 F.3d at 463 (*citing Compuserve*, 89 F.3d at

1262).

(5:09-CV-2613)

In Ohio, the first prong of the personal jurisdiction inquiry is satisfied if the defendant's conduct falls within the requirements of Ohio's long-arm statute, Ohio Revised Code § 2307.382.  Section 2307.382 provides, in relevant part, as follows:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action *arising* from the person's:
>
> (1) Transacting any business in this state; . . . .

§ 2307.382 (emphasis added).  Subsection (A) makes clear that for personal jurisdiction to exist under Ohio's long-arm statute, the cause of action must arise from the defendant's conduct in Ohio.  The statute, therefore, contemplates only specific jurisdiction.  Under the second prong, jurisdiction must comply with the requirements of due process which requires that the defendant must have "certain minimum contacts with the [forum state] such that the maintenance of the suit would not offend traditional notions of fair play and substantial justice."  *International Shoe v. Washington*, 326 U.S. 310, 316 (1945).

### A.  Personal Jurisdiction Under Ohio Law

Subsection (A)(6) of the Ohio long-arm statute, O.R.C. § 2307.382, allows personal jurisdiction over out-of-state defendants when the cause of action arises out of their "transacting business in this state."  "The phrase 'transacting any business' is broad and encompasses more than 'contract.'"  *Clark v. Connor*, 82 Ohio St.3d 309, 312, 695 N.E.2d 751 (1998).  "The term 'transact' as utilized in the phrase 'transacting any business' encompasses to 'carry on business' and to 'have dealings . . . .'"  *Goldstein*, 70 Ohio St.3d at 236 (*citing Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St.3d 73, 75, 559 N.E.2d 477, 480 (1990)).

-7-

(5:09-CV-2613)

In the past, courts have found no better guideline than the "bare wording" of the statute to establish whether a non-resident has transacted business within Ohio. *See, e.g.*, *KB Circuits Inc. v. BECS Technology, Inc.*, 2001 WL 40584 at *2 (Ohio Ct.App. Jan.18, 2001); *McKinley Machinery, Inc. v. Acme Corrugated Box Co., Inc.*, 2000 WL 961300 at *2 (Ohio Ct.App. July 12, 2000). More recently, courts have identified two factors that help determine whether an out-of-state defendant "transacted business" within the meaning of the long-arm statute. *See, e.g.*, *Paglioni & Assocs., Inc. v. WinnerComm, Inc.*, 2007 WL 852055 (S.D. Ohio Mar. 16, 2007); *Shaker Constr. Group, LLC v. Schilling*, 2008 WL 4346777 (S.D. Ohio Sept. 18, 2008).

The first factor is whether the out-of-state defendant initiated the dealing. *Paglioni*, 2007 WL 852055 at *9. If it were the defendant who "reached out" to the forum state to create a business relationship, the defendant has transacted business within the forum state. *Id.* The question of who initiates the contact, however, is but one factor to be considered and the determination is not always dependent upon who initiates the contact. *Military Supply, Inc. v. Reynosa Const., Inc.*, 2000 WL 109783 at n.3 (Ohio Ct.App. Jan. 26, 2000). With regard to "reaching out," as a general rule, the use of interstate lines of communication such as mail and telephones does not automatically subject a defendant to the jurisdiction of the courts in the forum state. *Benjamin v. KPMG Barbados*, 2005 WL 995589 (Ohio Ct.App. Apr. 28, 2005).

With respect to the first factor, the record before the Court does not definitively show which party initiated the contact. Hitachi has produced a letter from SLGO's lender to Hitachi, referencing an invoice prepared by Hitachi, stating that funds were ready and available for transfer for the sole purpose of purchasing the CT scanner at issue. ECF No. 23, Ex. E. This

(5:09-CV-2613)

letter is not evidence of initiating contact by SLGO given that the letter references an invoice

prepared by Hitatchi prior to the creation of the letter.  Hitachi also produced evidence of the

wire transfers from SLGO's lender to Hitachi for the purchase of the CT scanner.  ECF No. 23-6,

Ex. F.  The wire transfers are not evidence of initiating contact by SLGO as the funds transferred

represent the dollar amount previously negotiated for the cost of the CT scanner.  Thus, the

record before the Court does not establish which party initiated the contact in this case.

Nevertheless, it is clear that SLGO's agent *eventually* reached into Ohio to negotiate with

Hitachi.  Construing this information in the light most favorable to Hitachi, as the Court must,

aids Hitachi's argument to some minor extent.  This is but one factor to be considered and the

jurisdictional determination is not always dependent upon who initiates the contact.  *Military*

*Supply, Inc.*, 2000 WL 109783 at n.3.

The second factor is "whether the parties conducted their negotiations or discussions in

the forum state, or with terms affecting the forum state."  *Paglioni*, 2007 WL 852055 at *9.  If

the parties negotiated in Ohio with provisions affecting Ohio, the non-resident transacted

business in Ohio.  *Shaker Construction*, 2008 WL 4346777 at *3.  However, merely directing

communications to an Ohio resident for the purpose of negotiating an agreement, without more,

is insufficient to constitute "transacting business."  "Rather, there must additionally be some

continuing obligation that connects the non-resident defendant to the state or some terms of the

agreement that affect the state."  *Id.* (*citing Kentucky Oaks Mall*, 559 N.E.2d at 480).

The fact that SLGO purchased equipment (which arguably was located in Missouri) from

an Ohio resident is not dispositive of the jurisdictional question.  Pursuant to Ohio law, "the mere

(5:09-CV-2613)

existence of a contract involving a forum resident does not confer personal jurisdiction." *Nat'l City Bank v. Yevu*, 178 Ohio App.3d 382, 385, 898 N.E.2d 52, 54 (Ohio Ct.App 2008). Additionally, the fact that negotiations reached into Ohio does not mandate an answer to the personal jurisdiction issue. This is not a case in which a defendant visited Ohio multiple times to make representations in Ohio that induced a plaintiff to enter into the contract at issue. *See, e.g.*, *Kehoe Component Sales, Inc. v. Best Lighting Prods., Inc.*, 2009 WL 2591757, at *3 (S.D.Ohio Aug.19, 2009) (holding that a defendant's trips to Ohio for negotiations created personal jurisdiction under § 2307.382(A) (1)). Rather, SLGO never visited Ohio to conduct the negotiations, but instead relied only upon a letter and three wire transfers representing one purchase. Courts have held that such "mere communications to an Ohio resident are insufficient to constitute 'transacting business' within the meaning of the Long-Arm statute." *Id.* (*citing Shaker Constr. Group, LLC*, 2008 WL 4346777). Thus, "'[m]erely directing communications to an Ohio resident for the purpose of negotiating an agreement, without more, is insufficient to constitute "transacting business" within Ohio.'" *Id.* at *4 (*quoting Shaker Constr.*, 2008 WL 4346777, at *3); *Cf. Matrix Essentials v. Harmon Stores Inc.*, 205 F.Supp.2d 779, 785-86 (N.D.Ohio 2001) (rejecting interstate letters related to litigation that resulted in a settlement agreement as "transacting business"). There is no "more" here—in other words, no "continuing obligation that connects the non-resident defendant[s] to the state or some terms of the agreement that affect the state." *Shaker Constr.*, 2008 WL 4346777, at *3 (*citing Kentucky Oaks*, 559 N.E.2d 477, 480; *U.S. Sprint Commc'ns Co. Ltd. P'ship*, 68 Ohio St.3d 181, 185, 624 N.E.2d 1048, 1052 (1994)).

-10-

(5:09-CV-2613)

SLGO had no continuing obligation to Hitachi pursuant to the purchase of the CT scanner. Hitachi, however, had a continuing obligation to service the CT scanner as it was under warranty. The warranty service on the CT scanner took place exclusively in Missouri. After the warranty period expired, Hitachi alleges that it serviced the CT scanner approximately five additional times. Hitachi does not allege that SLGO contacted Hitachi to provide this service, but that it performed the service pursuant to the SMA.[2] Hitachi has not provided any other evidence of contacts, much less continuing contacts, that SLGO had with Hitachi in Ohio. Hitachi has not shown that SLGO ever entered Ohio or that any duties pursuant to the purchase of the CT scanner were to be performed in Ohio. While it is unclear who initiated contact between the parties, SLGO eventually reached into Ohio presumably at Hitachi's direction to make payment on the CT scanner. The payment made by SLGO to Hitachi's bank in Ohio is an incidental transfer. Accordingly, there are insufficient Ohio contacts to find that SLGO transacted business in Ohio to establish personal jurisdiction.

In addition to both of these factors, Hitachi must demonstrate that there is a "substantial connection" between SLGO and Ohio. *Shaker Construction*, 2008 WL 4346777 at *3. But the communications from SLGO to Hitachi in Ohio "happened solely because [Hitachi] happens to reside in Ohio, not because [SLGO] wished to create any kind of 'substantial connection' with the state." *McMunigal v. Bloch*, 2010 WL 2106186 at *4 (N.D. Ohio 2010).

---

[2] As discussed below, the Court finds that SLGO is not a party to the Service Maintenance Agreement and therefore is not bound under any of its terms.

(5:09-CV-2613)

Because Hitachi has failed to demonstrate that SLGO initiated the dealings, that negotiations occurred in Ohio, that the dealings had a large effect on Ohio, or that SLGO has a substantial connection with Ohio, personal jurisdiction over SLGO does not exist under Ohio's long-arm statute.

### B. <u>Constitutional Due Process</u>

Given that the Court has concluded that Hitachi has failed to establish that the Ohio long-arm statute, § 2307.382(A)(1), applies to confer personal jurisdiction over SLGO, the Court is not required to determine whether exercising jurisdiction would comport with due process. *Brunner*, 441 F.3d at 463 (*citing Compuserve*, 89 F.3d at 1262) (holding that a federal court may exercise personal jurisdiction over an out-of-state defendant *only if the following two requirements are satisfied*: (1) the law of the state in which the district court sits authorizes jurisdiction, *and* (2) the exercise of jurisdiction comports with the Due Process Clause). Nevertheless, the exercise of jurisdiction does not comport with the Due Process Clause in this case based on the following analysis.

In the Sixth Circuit, determining whether specific jurisdiction exists requires a three-part analysis. In *Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374 (6th Cir. 1968), the Sixth Circuit promulgated a three-prong test to guide the determination of whether specific jurisdiction exists as well as whether a defendant's due process rights are protected. The *Southern Machine* test provides:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection

(5:09-CV-2613)

> with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co.*, 401 F.2d at 381.  The Court employs the *Southern Machine* test to determine whether exercising personal jurisdiction would comport with due process.

With respect to the purposeful availment requirement, the Sixth Circuit in *Kerry Steel* noted that the mere fact that the defendant entered into a contract with a Michigan corporation did not mean that the defendant had purposefully availed itself of the "benefits and protections" of Michigan law.  *Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147, 151(6th Cir.1997) (*citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("an individual's contract with an out-of-state party alone" cannot "automatically establish minimum contacts")); *see also CompuServe*, 89 F.3d at 1265 ("merely entering into a contract . . . would not, without more, establish sufficient minimum contacts").

It is immaterial that SLGO sent one letter and made a payment, albeit in three separate wire transfers, to Hitatchi in Ohio.  *See LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1301 (6th Cir. 1989) ("The telephone calls and letters on which the plaintiff's claim of jurisdiction primarily depends strike us as precisely the sort of "random," "fortuitous" and "attenuated" contacts that the *Burger King* Court rejected as a basis for haling non-resident defendants into foreign jurisdictions."); *see also Scullin Steel Co. v. National Ry. Utilization Corp.*, 676 F.2d 309, 314 (8th Cir.1982) ("The use of interstate facilities (telephone, the mail), the making of payments in the forum state, and the provision for delivery within the forum state are secondary or ancillary factors and cannot alone provide the 'minimum contacts' required by due process").

-13-

(5:09-CV-2613)

Other than the one letter and payment, there is no evidence in the record before the Court of any "reaching out" by SLGO to Hitachi in Ohio, nor is there any evidence to believe that SLGO intended to establish "continuing relationships and obligations" in Ohio. *Burger King*, 471 U.S. at 473. The purchase of the CT scanner between SLGO and Hitachi represents nothing more than an isolated transaction, a one-time purchase of goods. *See Kerry Steel, Inc.*, 106 F.3d at 151. Even considering the nature of the purchase of the CT scanner, *e.g.*, the warranty, there is no indication that SLGO intended to create an ongoing relationship with Ohio or with Hitachi beyond what the purchase entailed. The warranty, as part of the one-time purchase, created an obligation on the part of Hitachi to provide service thereunder for a definite period of time in Missouri, not Ohio. This fact cannot reasonably be construed as establishing an ongoing relationship between SLGO and the state of Ohio or Hitachi. Nor can the Service Maintenance Agreement because SLGO is not a party to that agreement (see discussion below).

A finding that SLGO has not purposefully availed itself of the privilege of transacting business in Ohio precludes this Court from exercising personal jurisdiction, as all three prongs of the *Southern Machine* test must be satisfied. Therefore, the Court need not address the second or third prong of the test. *Matrix Essentials, Inc. v. Harmon Stores, Inc.*, 205 F.Supp.2d 779, 790 (N.D. Ohio 2001). SLGO's acts and the consequences caused by it are not substantial enough in Ohio to render the exercise of personal jurisdiction over it reasonable. SLGO had no reason to anticipate being haled into Ohio courts where there is no indication that it ever traveled to Ohio to conduct business, where its contacts with Ohio were limited to interstate communications with Hitachi (the letter and payment), and where all warranty service took place in Missouri.

-14-

(5:09-CV-2613)

Having found that specific personal jurisdiction does not exist because of SLGO's lack of minimum contacts with Ohio concerning the purchase of the CT scanner and there is no other evidence in the record before the Court of any other contacts whatsoever between SLGO and Ohio, it is clear that general jurisdiction does not exist, nor does Hitachi argue as much. Therefore, having determined that Ohio law does not establish personal jurisdiction over SLGO, the Court turns to Hitachi's argument that the forum selection clause contained in the SMA confers this Court with jurisdiction over SLGO.

### C.  The Forum Selection Clause

As stated above, the plaintiff bears the burden of demonstrating that personal jurisdiction exists. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir.2002).  It is important to note that in its opposition to SLGO's motion to dismiss pursuant to Rule 12(b)(2), Hitachi does not present any discussion or facts concerning Ohio's long-arm statute or that the due process requirements of the Constitution have been met.  Rather, Hitachi relies exclusively on the argument that SLGO is bound by the forum selection clause in the SMA.  Specifically, Hitachi argues that SLGO is bound by the forum selection clause not as a signatory to the SMA, but as a successor entity to West County and/or a third party beneficiary to the SMA, that SLGO ratified the SMA and under the doctrine of mutual mistake.[3]  ECF No. 23 at 5-6.

---

[3] In its opposition, Hitachi expends significant effort supporting the validity of the forum selection clause.  That issue, however, is not before the Court.  The issue before the Court is whether SLGO is bound by the forum selection clause, *i.e.*, applicability, not the validity, of the forum selection clause to a non-signatory is at issue.

(5:09-CV-2613)

It is clear that SLGO is a non-signatory to the SMA.  Upon review of the SMA contract, SLGO is not mentioned by name or referenced in any manner anywhere in the contract.  ECF No. 20.  Accordingly, SLGO is not a signatory to the SMA.  "[U]nder the basic principles of contract law, a contractual agreement is unenforceable against a person or entity who was not a party to the contract."  *WashPro Express, LLC v. VERwater Envtl., LLC*, 2007 WL 641425, 2007-Ohio-910 at ¶ 9 (12th Dist. March 5, 2007).

A non-signatory to a contract, however, may be bound by a forum selection clause in that contract if the non-signatory is sufficiently "closely related" to the dispute that it is foreseeable that the party will be bound.  *See Baker v. LeBoeuf, Lamb, Leiby & Macrae*, 105 F.3d 1102, 1105-06 (6th Cir. 1997).  While the Sixth Circuit has yet to explicitly interpret the term "closely related" in this context, several district and circuit courts have provided guidance interpreting the term.  For example, shareholders, officers, and directors of a corporation may be bound by a forum selection clause in a corporate contract.  *See Marano Enters. of Kansas v. Z-Teca Rests.*, L.P., 254 F.3d 753, 757 (8th Cir. 2001); *Manetti Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988).  Corporations wholly owned and controlled by a signatory to a contract may also be bound by a forum selection clause.  *See Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 209-10 (7th Cir. 1993).  The District Court for the Southern District of Ohio cited Ohio case law for additional examples, such as where the non-signatory is in an agency relationship with one of the parties to the contract with a forum selection clause, *see WashPro Express, LLC*, 2007 WL 641425, and where the non-signatory is a third-party beneficiary of the contract, *see Barrett v. Picker Int'l, Inc.*, 68 Ohio App.3d 820, 826, 589 N.E.2d 1372, 1375-76

-16-

(5:09-CV-2613)

(Ohio Ct.App.1990); *Highway Commercial Servs., Inc. v. Zitis*, 2008 WL 1809117, *4 (S.D.Ohio April 21, 2008).

The District Court for the Middle District of Tennessee summarized these cases as follows:

> In sum, it is clear from these cases that courts considering this question of whether a non-signatory may be bound by a forum selection clause take a common sense, totality of the circumstances approach that essentially inquires into whether, in light of those circumstances, it is fair and reasonable to bind a non-party to the forum selection clause. As noted above, this approach places emphasis on whether it should have been reasonably foreseeable to the non-signatory that situations might arise in which the non-signatory would become involved in the relevant contract dispute. The question, then, is whether, in light of all of the circumstances of this case and what should have been reasonably foreseeable to Regions, it is fair and reasonable to conclude that Regions is sufficiently "closely related" to the parties to the HMA that Regions should be bound by the forum selection clause.

*Regions Bank v. Wyndham Hotel Mgmt., Inc.*, 2010 WL 908753 at *6 (M.D. Tenn. March 12, 2010). The Court finds this approach persuasive and considers the facts at issue here in the same light.

### 1. SLGO is not Bound by the Forum Selection Clause as a Successor Entity

Hitachi's first argument is that SLGO is bound by the forum selection clause in the SMA as a successor entity to West County. ECF No. 23 at 6. Hitachi claims because SLGO purchased the medical equipment to which the SMA relates, SLGO is a successor entity to the SMA contract pursuant to the terms of the "Assignment" clause in the SMA. This argument lacks merit.

-17-

(5:09-CV-2613)

First, assuming *arguendo* that SLGO purchased the medical equipment specifically covered by the SMA[4], the SMA is a separate and distinct contract for services rather than a contract for the purchase of the equipment itself. Hitachi has not provided evidence showing that by purchasing the CT scanner at issue, SLGO accepted the terms of the SMA and thereby is a successor entity to that contract as well. Second, in order for a valid and binding assignment under the terms of Hitachi's own SMA contract, Hitachi's "express written consent" is required. ECF No. 20 at 4, ¶ 9. Hitachi has not suggested it consented in any manner, written or otherwise, to the assignment of the SMA to SLGO.

Accordingly, SLGO is not bound by the forum selection clause under the successor entity theory nor has Hitachi shown in any respect that SLGO is a successor entity to the SMA.

## 2. SLGO is not Bound by the Forum Selection Clause as a Third Party Beneficiary

According to Ohio law, only a creditor or donee beneficiary can be an intended third party beneficiary under a contract to which they are a non-signatory. *Sagraves v. Lab One, Inc.*, 316 Fed.Appx. 366 at *4 (6th Cir. 2008) (*citing Visintine & Co. v. N.Y., Chi. & St. Louis RR. Co.*, 169 Ohio St. 505, 507, 160 N.E.2d 311, 313 (Ohio 1959). "The parties to a contract must 'intend [directly or primarily] that a third party benefit from the contract in order for that third party to have enforceable rights under the contract.'" *Reisenfeld & Co. v. Network Group, Inc.*, 277 F.3d

---

[4] Curiously, SLGO denies purchasing the medical equipment at issue. ECF No. 17-1 at 2 (Affidavit of Dr. Al. A Elbendary, sole owner of SLGO). For purposes of Hitachi's Rule 12(b)(2) motion, however, the Court considers the evidence in the light most favorable to the Plaintiff and "will not consider facts proffered by the defendant that conflict with those offered by the plaintiff . . . ." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir.2002).

(5:09-CV-2613)

856, 863 (6th Cir.2002) (*citing Laverick v. Children's Hosp. Med. Ctr. of Akron*, Inc., 43 Ohio App.3d 201, 540 N.E.2d 305, 309 (Ohio Ct.App.1988).  A party is a creditor beneficiary "if the performance of the promise will satisfy an actual, supposed or asserted duty of the promisee to the beneficiary and is not intended as a gift."  *Visintine & Co.*, 169 Ohio St. at 507.  A party is a donee beneficiary if "performance of the promise is meant to bestow some gratuitous benefit rather than to satisfy a legal obligation."  *Mark-It Place Foods, Inc. v. New Plan Excel Realty Trust*, 156 Ohio App.3d 65, 81, 804 N.E.2d 979 (2004).

The rules of contract formation in Ohio mandate that the court looks to the plain language of the contract to determine the parties contractual intent.  *See, e.g.*, *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 313, 667 N.E.2d 949 (1996) ("The intent of the parties is presumed to reside in the language they choose to use in their agreement."); *Penn Traffic Co., v. AIU Ins. Co.*, 2001 WL 1085242, at *10 (Ohio App. 4 Dist. 2001) ("[W]here the terms in an existing contract are clear and unambiguous, this court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties.").  The plain language of the SMA contract before the Court does not demonstrate Hitachi's contentions that SLGO is an intended third party beneficiary under the SMA.  Neither West County nor Hitachi promised to perform under the SMA to satisfy a duty owed to SLGO.  In similar fashion, West County's and Hitachi's performance is not for the purpose of "bestowing a gratuitous benefit" on SLGO.  *Mark-It Place Foods, Inc.*, 156 Ohio App.3d at 81.  And lastly, Hitachi has not shown evidence that it and West County entered the SMA directly or primarily for the benefit of SLGO.

-19-

(5:09-CV-2613)

The only connection SLGO may have to the SMA is that it purchased the CT Scanner from Hitachi that was owned by West County that the SMA covered.  But that purchase took place approximately three months *after* Hitachi and West County executed the SMA contract.  Hitachi argues that West County "surely executed [the SMA] with the intention that [SLGO] would own the" medical equipment and that West County "expressly agreed to pay for maintenance and inspection services for" the medical equipment.  ECF No. 22 at 6.  This argument finds no support in logic nor the facts.  SLGO is not an intended third party beneficiary pursuant to the SMA.

Hitachi also directs the Court to a similar case it is prosecuting in this district currently before District Judge John Adams, Case No. 5:09-cv-914.  In that case, Judge Adams denied three defendants' motion to dismiss finding that the defendants were at least third party beneficiaries.  ECF No. 22-1.  That case and Order are distinguishable from the instant case with respect to at least one dispositive fact: The SMA contract at issue before Judge Adams listed the defendants' name and address as locations for Hitachi to service and maintain the medical equipment.  ECF No. 22-1 at 2.  The SMA in this case lists no such information.  As mentioned above, there is no mention or reference to SLGO in the SMA executed between West County and Hitachi.  Therefore, the case before Judge Adams provides no support for Hitachi's argument that SLGO is an intended third party beneficiary to the SMA.

For the aforementioned reasons, the Court finds that SLGO is not so closely related to the parties or to the dispute that it was reasonably foreseeable that it would be bound by the forum selection clause contained in the SMA as an intended third party beneficiary.

(5:09-CV-2613)

### 3.  SLGO is not Bound by the Forum Selection Clause by Ratification

Hitachi argues that SLGO ratified the SMA by accepting the benefits under it, thereby SLGO is bound by the forum selection clause.  ECF No. 23 at 8.  The test, however, is whether or not a party is so closely related to the contracting parties or dispute, that it that it is *foreseeable* that the party will be bound.  *See Baker v. LeBoeuf, Lamb, Leiby & Macrae*, 105 F.3d 1102, 1105-06 (6th Cir. 1997).  Ratification of the SMA, in this context, allegedly took place *after* contract formation by a non-signatory who was not closely related to either of the contracting parties and thus could not, by definition, have been *foreseeable* or even possibly occurred. Binding a non-signatory to a contract containing a forum selection clause pursuant to a ratification theory lacks support tangentially as well as under the basic doctrines of contract law. *See* 12 Williston on Contracts § 35:22 (4th ed.)  ("Ratification may generally be defined as the adoption or confirmation of a *prior act* professedly *performed* on the principal's behalf *by an agent* without the agent obtaining prior authority.") (emphasis added).  Hitachi does not assert that an agency relationship existed between West County and SLGO.  Nor does the Court find evidence in the Complaint or pleadings that West County acted on behalf of SLGO as its agent or otherwise upon execution of the SMA.

Accordingly, SLGO is not bound by the forum selection clause contained in the SMA contract by ratification.

### 4.  SLGO is not Bound by the Forum Selection Clause Pursuant to Mutual Mistake

Lastly, Hitachi argues that SGLO is bound by the forum selection clause pursuant to the doctrine of mutual mistake because the parties to the SMA (Hitachi and West County, a.k.a.

-21-

(5:09-CV-2613)

Bowman) mistakenly believed "that West County would ultimately purchase and use the" medical equipment at issue.  ECF No. 22 at 8.  Again, this argument lacks merit.

"A mutual mistake requires a mistake made by both parties [to a contract] regarding the same fact."  *Seals v. General Motors Corp.*, 546 F.3d 766, 772 (6th Cir. 2008) (*citing Reilley v. Richards*, 69 Ohio St.3d 352, 632 N.E.2d 507, 509 (1994)).  Here and as found above, SLGO is clearly not a party to the SMA.  SLGO is not mentioned by name or referenced in any manner in the SMA.  SLGO is not an intended third party beneficiary, a successor entity, closely related to the contract and nor was West County acting as an agent for SLGO.  Thus, SLGO cannot be bound by the forum selection clause of the SMA pursuant to the doctrine of mutual mistake.

Accordingly, the Court finds that it lacks personal jurisdiction over Defendant St. Louis Gynecology & Oncology, LLC pursuant to Rule 12(b)(2), which thereby renders venue in this district improper pursuant to 28 U.S.C. § 1391(a).  Given that the Court lacks jurisdiction over Defendant St. Louis Gynecology & Oncology, LLC and venue in this district is improper, it declines to address the merits of SLGO's motion to dismiss pursuant to Rule 12(b)(6).

## IV.  Conclusion

For the aforementioned reasons, Defendant St. Louis Gynecology & Oncology, LLC's objections (ECF No. 41) to the Report & Recommendation are sustained.  Thus, the motion to dismiss pursuant to Rule 12(b)(2) & (3) (ECF No. 17) is GRANTED.  The motion to dismiss pursuant to Rule 12(b)(6) (ECF No. 18) is DENIED as MOOT.

Therefore, the claims in the Complaint against Defendant St. Louis Gynecology & Oncology, LLC  are dismissed without prejudice and Defendant St. Louis Gynecology &

(5:09-CV-2613)

Oncology, LLC is dismissed from this action.  The case shall proceed only against Defendant

Kirk A. Bowman.

      IT IS SO ORDERED.


 February 22, 2011                                     *s/ David D. Dowd, Jr.*
Date                                          David D. Dowd, Jr.
                                                U.S. District Judge